Yes, your honor. Mr. Richards, are you with us? Yes, I am. And Mr. Garver, you can turn your camera on. Case number 20-10500 Ngayong Garang v. City of Ames, et al. May it please the court. Your honors, my name is Mike Richards. I represent the City of Ames, Iowa, and its police officers in an appeal from the Southern District of Iowa on the denial of a motion for summary judgment on probable cause for an arrest and qualified immunity and, or qualified immunity for an arrest. The case involves an assault that occurred on an individual named Wyatt Graves on October 15, 2017. The plaintiff, Mr. Garang, was ultimately arrested for the assault and battery of Mr. Graves. Subsequent to the arrest, based on the exculpatory evidence that was provided by my client, the City of Ames Police Department, to the prosecutor, the charges were dropped against Mr. Garang and he was let free. Subsequently to that, Mr. Garang sued the City of Ames for false arrest, false detention, in violation of his Fourth Amendment rights in 1981 and 1983. The district court, in response to our motion for summary judgment, we believe, as well as our motion to reconsider, erred in a variety of ways in the opinions. And I think that those errors are adequately addressed in the brief for the most part. In particular, the court failed to evaluate the facts from the perspective of the arresting officers, failed to look at the totality of the circumstances, as opposed to individual facts, and then finally failed completely to do the second step of the required analysis for a qualified immunity evaluation. And that the court utterly failed to evaluate whether there was arguable probable cause for the arrest. But what I'd like to do today, Your Honors, is focus on some facts that the court did find to be uncontested, because I believe that instead of having to remand this case for the court to correctly do the qualified immunity analysis, there are undisputed facts cited by the district court judge that this court can find probable cause or arguable probable cause sufficient to find in the favor of Ames and its police officers. The following facts are uncontested. Mr. Graves called the police, called 911 and said he was assaulted by two or three African-American males and two African-American females. He was hit over the head in his apartment complex with a bottle and they stole some of his property. Ames police department responded to the scene. On their way to the scene, they received a tip that an individual named Goni Bejiek was a possible suspect. Now, one of the police officers, Officer McPherson, knew Goni Bejiek, and she saw Goni Bejiek as she was arriving at the apartment complex, and she saw Goni Bejiek with the plaintiff, John Garang. So Officer McPherson goes into the lobby of the apartment complex, starts questioning Mr. Bejiek about this crime that occurred. Mr. Garang, while she's questioning Mr. Bejiek, comes back to the lobby. He peeks his head around through a door in a stairwell and is very interested in the interaction that the police had with Mr. Bejiek, the identified potential suspect. So Officer McPherson, after those two contacts with him, walks over to Mr. Bejiek, or Mr. Garang, the plaintiff, and says to him, what is your name? Mr. Garang says, my name is John Garang. Now, in the eyes of Officer McPherson, that was crime number one that evening because his name was not John Garang. He provided false information to a uniformed police officer, false identification. She starts to run his name in the dispatch, and she says to Mr. Garang, stay here. He did not stay there. He attempted to leave. He attempted to go up the stairwell and leave the location where she asked him to stay. From the eyes of Officer McPherson, that's crime number two that evening. That's interference with justice, interference with official acts. Officer McPherson goes into the stairwell, orders him to come back. He does come back, and he ultimately gives his correct name. He says, my name is John Garang, or pardon me, Nayong Garang. He says, John is just a nickname I go by. The name Nayong Garang does come back in the system, and Officer McPherson continues to question him. A third individual named Pook Kang comes down into the lobby, and the police start- Counsel, question for you before you leave those points, these things that you say were crimes. On the failure to give his correct name, does it make a difference if the name that was given is a name that this person normally used, a commonly used nickname, in other words? That's a good question, Judge Shepard, and the point that Mr. Garang argues that, I think the answer is no, because in a probable cause analysis, and for a qualified immunity analysis, you're looking at it from the perspective of the officer. You're not looking at it from the plaintiff's perspective. So all the officer knows at that time is that he gave him a false name. And to suggest that the plaintiff suggests, Mr. Garang suggests that they should have known that that was the nickname. But that's like saying that the officer should have assumed that he couldn't have had a westernized name like John. So again, from the officer's perspective, I don't think that matters. Okay. And then second question, and I understand your response there, that issue was cleared up apparently a few minutes later when the appellant gave his legal name to the officer. And that leads me to ask this question. Does all of this, these things, the giving a false name, no return on the database, Mr. Garang leaves when he's told to stay. Does all of that go towards eventual probable cause to arrest, or does it have a legitimate reason for the officer to require Mr. Garang to stay where he is and to submit to further investigation? And is there a difference between those two? I think the answer to that question is both. I think that it does give, because this court has indicated in so many different opinions, that it's the totality of the circumstances that you have to look at in this situation. Because the sum total of the parts is much greater than the individual identifiers. So the fact that he gave a false name and then tried to flee, and then she had to order him back and he gave a real name, yes, he did eventually give his real name to her, but it doesn't change the fact that he initially gave him a false name and attempted to leave. And then the final fact, Your Honors, that I think needs to be considered and that thereafter, Mr. Graves came down to the lobby, the individual that was assaulted. And he spoke to the police, and you can see on the video, this is uncontested. He points to all three individuals that are being questioned. He points to Mr. Kang, who did assault him, eventually it was determined. He points to Mr. Bijak, and he points to Mr. Garang, and then they're arrested. Now, the police officers testified unequivocally that at that moment, Mr. Graves said, those three people assaulted me. So not only do we have an individual who's been with Mr. Graves- Is it fully uncontested? Mr. Graves eventually says that he doesn't recall doing that, but he wouldn't call you basically, he wouldn't call you a liar if you did it. And the video itself, I don't know if the other judges had technical difficulties with it, I could not get that video to open and play. So I didn't see it. I'm sure before we get done, we're going to have to figure out what does that video actually show? But you would describe the video fairly as showing him pointing to the three individuals, because the briefing characteristics are that they're not really identified by name and that, you know, there's some, the question of whether one conversation took place or two conversations took place. And, and like I said, not having had the ability to see the video, I'm just trying to figure out, does the video, you say it shows him pointing directly at all three of the identified individuals? Yes. And I, and I will, you know, in these circumstances, when you have a positive, someone to come to give a positive identification, they're away from the people, so they're across the room, but I would suggest Judge Kobus that he's, or pardon me, Judge Harrison, that he points individually at the individuals. And it's a quick identification, but he did do it. Now you did mention a prior time that he was in the lobby, Graves, and that is accurate. He actually came down to the lobby once prior to that too, when Garang was not in the lobby, was not being questioned and he pointed only at Bejiek, the second time. This is Judge Kobus, if we disagree and find that there is a factual dispute about the ID, can you still prevail if we set aside the ID here? And if so, how? I think we can, Judge Kobus. I think that, as I said before, although he wasn't arrested for giving false information or obstructing justice, that doesn't matter in the probable cause analysis or in the qualified immunity analysis, because an arrest is lawful if an officer had probable cause to arrest for any offense, not just the offense cited at the time of the arrest or booking. We've cited the case law in our briefs that talks about giving a false name right there, it's sufficient, obstructing justice, trying to get away, that is sufficient from a probable cause standpoint. So I believe even if the court finds that the final fact is not conclusively established, that you can still find in our favor. I would suggest, however, that I do believe if you look at the testimony closely, it is conclusively established. I agree that Mr. Graves testified that he didn't remember identifying that, but it was 600 days later when his deposition was taken and he had been hit over the head with a knife and that he didn't remember it. And we cite the case law in our brief that says a failure to recall something doesn't create a contested fact if the other facts establish that it did occur. And interestingly enough, the plaintiff cites to an email repeatedly in their brief, Mr. Garang does, which is found on APP 117. It's an email from Officer Yetmar that was written that night, that specifically states that Garang, Kang, and Bisiak were identified by Mr. Graves. So I think the totality of the circumstances support our position. And when Mr. Garang was questioned about it in his deposition, he said, I couldn't hear him. Ultimately, when he was trying to resist the motion for summary judgment, he directly conflicted with his unambiguous deposition testimony. And I think the court under the case law that we cited can disregard that. I see that I've got a minute and 30 left, and unless the court has specific questions, I'd like to reserve that remaining time for rebuttal. And you may do that. Mr. Garver, you may proceed. And your your microphone is muted. That better, Judge? Yes. Sorry. So I'll start with the list of uncontested facts that Mr. Richard's claims are uncontested. I disagree. First of all, there is no mention that at any time that there was notice given to police that there was one to two white people that may have been involved in the assault. And that was, in fact, the purpose for the inclusion of the Yetmar email in the morning. And she cites one to two white males. It's abbreviated, but that's what it is. And you'll see in the video and throughout all of the discovery that at no time did any of the officers make any effort to question one white person in the lobby or otherwise just didn't do it. Excuses given to me in deposition include they didn't have enough manpower and so forth. So next uncontested facts is the person that gave this tip that Goni was a suspect didn't exactly say that. They said that they heard something in an elevator and in the elevator at the time was somebody they recognized as Goni. There was no other information other than the fact that this Goni individual was in an elevator with some people that were saying some incriminating things, not that he was with them, not that he said anything. That's the extent of it. Next, the claim that Goni was with Goring when the police arrived is not true. Goni was outside and Goring saw him, went to the front door, pushed it open because that's one of the doors that has to be open from the inside at this place called the Foundry, a college apartment complex. So it's busy. The lobby's in and out, in and out, in and out. Kids. And you'll see on the video, there's dozens of kids coming and going through that lobby during the relevant time frame. Only three blacks, by the way, were in the lobby at any time. Those were the three that were arrested, one that turned out to be guilty, the other two released from custody. With respect to John Goring, he denies that he was ever told to stay there, that he was ever advised why there was any investigation going on. And when he was standing in the doorway, he simply stepped inside to go back to his apartment. And at that point in time, the officer said, stay here. And he cooperated fully. So we have a dispute about that alleged crime. And the officer herself in the deposition cannot say for sure that when she told Goring to stay there. With respect to the false information, John Goring has used John Goring since he can remember. That's his name. And he gave his correct birth date. When asked about the problem with the computer coming back, he immediately said, oh, oh, maybe it's under my name that was given to me in Lebanon where I was born. And and offered up that name without any problem at all. My point is, to give a false name to someone, you have to have intent to mislead and to give a false name. And interestingly, throughout the process, including the deposition, Mr. Richard Richards has called my client John Goring. But we're not really arguing here about whether he could have been convicted of that or we were. The question here is whether at the time of this interaction, there was probable cause or arguable probable cause. And the fact that the officer later learned that this was an alias or a nickname, how does that address the initial probable cause determination the officer made on the scene? Well, I don't think it has anything to do with it. I think that they were holding him because there was three black people involved in a assault and they had three black people and they were wondering what to do. And and this went on for quite a long time until the sergeant arrived and went upstairs, brought the victim down again, and then the arrests were made. But I don't think that anything with the name or with the trying to walk back up to the apartment had anything to do with the circumstances. And McPherson, Officer McPherson, he detained John Goring after that occurred. Well, do the subject subjective motivations of the officer matter here? Do we look at this objectively and what a reasonable officer would have done in that situation? I think it's under the objective determination. Yes. So my question, I guess, is why wouldn't an objective officer think that there was a criminal violation when he or she was provided with a false name? For my point is, it's not a false name. I mean, I was introduced as Rob Garver. My name is not Rob Garver. My name is Robert Garver. So if I were to be arrested for giving an officer Rob Garver, I would have a problem with that. I call Michael Richards Mike all the time. That's what he goes by. That's what he writes me. Emails says Mike Richards. That's not his name. Saying. Saying John Goring, when that's the name that he goes by, is not an intentional act on his part to try to mislead the officers with the false name just can't be. He would never in a million years think I need to say I am. I don't even know how to pronounce it, to be honest with you, I've never called him by that name. But Mr. Richards says Naya. I've never said Naya and never been introduced to him, talked to him as anything other than John Goring. I just don't think that rises to the level of an intentional interference with a police act. How about the idea of the by the victim, Mr. Garver? What's what's an objectively reasonable officer to do when the victim makes a face to face identification of a person as a perpetrator in the presence of investigating law enforcement officers? OK, as apparently we the what we've been told here is that's what happened. And and the appellate, when asked about it, apparently a deposition said he he didn't he he didn't overhear the conversation. So is it better to put these other things aside, isn't that isn't the identification enough to give at least reasonable probable cause to an objectively reasonable officer to make this arrest? If it was a normal identification and it was face to face, as you've said, that is just not not true. Every case looks at the facts in detail. And in this case, one of the uncontested facts claimed by Mr. Richards is that Greg was not in the lobby when the victim first came down. That's absolutely untrue. The video is clear that Greg is standing in the lobby. The victim comes down on his own into the view of the camera in the lobby. And he is a mess. He is beat up in the face, has one eye that swollen and he stands there and he holds his finger out and points to a person in red. That's probably two, three feet from him. That turns out to be Tang points to the person in white that was Goni Bijong. Goni's head was down, but he had all white on it. He pointed to him. This is consistent with what he told the two officers who came up to talk to him yet more. And there's two blacks. I can tell you nothing more than that. And they had on red and white. He looked across the rang is across the lobby at that time with McPherson. At no time does he point to him and he is not identified. Simply didn't happen. That's why when the sergeant got there and had a short conversation with one of the officers, he went up and got the victim and brought him back down. And that's the idea that they're talking about, and it's not on camera and it's and you don't see him pointing at all at the at the ring across the room. If he pointed, it's not on video. Because he was kept over by the elevators some distance from the ring was towards the front doors in that respect. But then the officers testified that he at some point identified Mr. Garang. The officers said that. Well, Officer Ogden was the sergeant that came in, he stated that after talking with him, that Garang said that all three were involved. OK, OK, so why wasn't that? Why isn't that enough? Well, Officer McPherson, who was with him, testified that she could not identify the victim by a picture because the victim who was over by the area where we're talking about was too far away for her to have any possibility to recognize facial features. So McPherson herself said the distance is too far that she couldn't identify in deposition a photograph of the victim. OK, so the distance is too far. But more importantly, we know that Wyatt Gray is the victim had one eye swollen, almost completely closed, had been knocked in the head to the floor with the bottle, was recommended by the officers that he go to the hospital, was intoxicated, has been drinking all night, had been smoking marijuana and was simply not able to make any sort of decision or identification, nor did he even know who it was that beat him up other than a black guy in red and a black guy in white. So I think that credibility of the one eyewitness, that's all there is here because there is no totality of circumstances. That's the other thing that plays into this, Judge, is the reports, the minutes of testimony. They're all inaccurate, hopefully by accident, but they have misconstrued what happened there, including stating that Gray had property with him, stolen property. He had nothing that he was in the vicinity of the crime. No, he was in the lobby of the place where he lived. He was having a birthday party and as he stated in his affidavit, he was in the lobby to let some partygoers come in through the locked door and he had blood on his shirt. That wasn't true. So there's just a number of things that happened. That are contrary to what is alleged, so the only thing they're relying on that they could rely upon is the fact that this victim way across the room was unreliable, can't remember doing anything, said, yeah, these guys did it. So I think this is a question of fact for the jury to determine. Moreover, on the 16th, two days afterwards, the apartment manager calls and says, I have the video that shows the hallway of floor four where this attack took place. I know these people. I'm the manager and I can tell you John Gray was not in that apartment. He was never in there. It couldn't have done it. So it's the same as an alibi. The John Gray is on the other side of the state when this happens, and yet they continue to hold him in jail for another 16 days while they serve a search warrant on his apartment. Eventually, then letting him out on a decision, whose decision was it to keep him in custody? Was that the officer's decision or the city's decision here? The assistant county attorney, Sean Fleckle, gave testimony that he met with the detective on a regular basis and relied upon the detective's information and recommendations with respect to who made the decision. Well, the decisions are always made, of course, by the prosecuting lawyers, the cops can't decide whether or not they're going to go forward with a criminal case. But the case law doesn't say that the cops are off the hook the second they turn the arrestee into the police station or to the jail. And that cannot be the law. And in this case, Kippen, the detective, in fact, he was the only one that looked at the video. The county attorney said, I didn't have time to look at it. I just relied upon what the detective told me. Well, the video was 100 percent exonerating on the 16th. And it was given to Officer Yetmar, who prepared the the initial report. And then we go to the 24th of October, so now he's been in jail since the 15th and on the 24th, there's minutes of testimony used to get the trial information. It says that Summer Feeker, the apartment manager, will testify that John Garang assaulted Wyatt Graves. That's just not true. She said just the opposite. She's just the opposite. She gave them a video that says Garang wasn't even in the apartment. And yet that's used and it's false. And the case law says when when you use false information in these reports, you cannot use. We're not going to allow for implied immunity, it's not approved of and it shouldn't be. And there's and there's case law, several cases, the J.C. Penney case, the Kraft case where the videotape shows that the defendant is not involved. And yet in those cases, the same thing, they just held them. And in this case, Hippen continues to say that he knows that somehow Garang is involved. Well, the only involvement was he was seen in the hallway and back and forth with the people that were the bad actors. So guilt by association was used to hold him in jail and then no evidence was found and he was released. That's what happened to Mr. Garang. All right, counsel, thank you very much for your argument. Mr. Richards, you have a little bit of time left. You may proceed. Your Honor, as I want to address a few of the comments that were made with respect to what happened after he was arrested, that has nothing to do with whether or not there was probable cause for the arrest or arguable probable cause for the arrest. I do want to clarify the record, though. We were the yes, we did receive the video evidence two days afterwards and immediately provided it to the prosecutor in the email that Mr. Garver includes in the appendix. It says he's not in the room when the assault occurred. We provided that information as soon as we as soon as we had it. But it doesn't matter. All of that stuff and all of the argument that the plaintiff has continued to make, Mr. Garang has continued to make in this case, is Monday morning quarterbacking, looking back. And that's not the standard when you're making an arrest because a police officer can't be required to try a mini case on the scene. They have to look at the information that's before them and they have to make a determination if there's probable cause. If there is probable cause, the arrest is fine. If there isn't probable cause, it's still fine if there's arguable probable cause and the totality of the facts in this case clearly establish your honors that there is at least arguable probable cause. And one final comment that there was a dispute about some of the facts that that that I said were undisputed. But if you look at the court's summary judgment order in the court's motion to reconsider order, the facts that I cite are contained in those. So Mr. Garver may take issue with them, but that's what the court found. So I appreciate your time, your honors today. And unless you have any other questions, I see that my time has expired. All right. Thank you very much, counsel. Case is submitted. Decision.